# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 20-0817V

| | |
|---|---|
| MICHELLE HAN,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: February 21, 2024 |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Meghan Murphy*, U.S. Department of Justice, Washington, DC, for Respondent.

### **DECISION DISMISSING PETITION**[1]

On July 6, 2020, Michelle Han filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of a Hepatitis A vaccine she received on April 22, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner cannot show she suffered the residual effects of her left-sided shoulder injury for more than six months – and

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

therefore the Petition warrants dismissal, since all Vaccine Act claims must meet the severity requirement.

## I.     Relevant Procedural History

Ms. Han filed her petition and medical record exhibits on July 6, 2020. (ECF No. 1). The parties initially attempted to informally resolve this case but reached an impasse. A deadline was therefore set for Respondent to file the Rule 4(c) Report setting forth the issues that were being contested. (ECF No. 29). He did so on May 17, 2022. (ECF No. 30).

Respondent argued in the report that Petitioner had not shown that the symptoms from her injury lasted for more than six months. Rule 4(c) Report at 6. Ms. Han underwent an MRI showing no acute abnormalities in May 2019, and then attended four physical therapy sessions, the last of which occurred on July 3, 2019 (just under three months post-vaccination), at which time she had normal range of motion and strength in her left shoulder. *Id*. In addition, Ms. Han did not treat or complain of shoulder pain for more than five months after her last therapy visit. *Id*. During these five months,

> she completed thirty days of physically rigorous military training for U.S. Army Officer Boot Camp at Fort Sill, with no documentation of any complaints of lingering shoulder pain or accommodations granted for lingering injury; sought treatment for a left hip injury sustained in early July 2019, and had a number of follow-up medical visits and physical therapy sessions throughout July; complained of back pain but not shoulder pain; sought treatment for left ear pain, ringing and numbness lasting for three hours in September 2019; received a polio vaccination in her left deltoid on September 17, 2019, with no complaints; and attended physical therapy sessions for left hip and knee pain in October and November of 2019, with no mention of any ongoing shoulder pain.

*Id*. Thus, Respondent argued, Petitioner's shoulder pain appeared to have resolved in the summer of 2019 and thus, her shoulder injury did not persist for the requisite six months after vaccination to establish the severity requirement under 42 U.S.C. § 300aa-11(c)(D)(i). *Id*.

The parties have briefed the issues in dispute ("Motion" and "Response") and have requested that I issue a ruling. My findings are presented below.

## II.     Issue

At issue is whether Petitioner continued to suffer the residual effects of the SIRVA for more than six months. 42 C.F.R. § 100.3(a) XIII.A. (2017) (Hep A vaccination); Section 11(c)(1)(D)(i) (statutory six-month requirement).

## III.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at \*20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, \*4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.     Finding of Fact

I make the findings after a complete review of the record to include all medical records, affidavits, Respondent's Rule 4(c) report, and additional evidence filed. Specifically, I base the findings on the following evidence:

- Petitioner's medical history is unremarkable for any shoulder symptoms or injuries prior to the date of vaccination. *See generally* Ex. 2.

- Petitioner received a Hepatitis A vaccine on April 22, 2019, at St. Francis Urgent Care, located in Hayward, California. Ex. 1 at 3. The vaccination record states that the vaccine was administered in her left shoulder. *Id*.

- Four days after vaccination, at a telemedicine visit with her primary care provider, Dr. Jie Qu on April 26, 2019, Ms. Han complained of feeling "lots of pain" while receiving her Hepatitis A vaccination. Ex. 2 at 363. She stated that she had swelling over the injection site that was six inches in diameter, warm, red, and indurated. *Id*. Ms. Han stated that the swelling had gone down, but that she still had pain in the posterior area of her shoulder that was a "sharp, tingling sensation radiating to the neck." *Id*. at 364. She also reported pain with movement of her arm, though Advil helped partially mitigate it. *Id*. Dr. Qu diagnosed Ms. Han with an injury to the injection site, noting that it was unlikely to reflect a bone injury to the shoulder. *Id*. Ms. Han was instructed to continue using NSAIDs, cold compresses, and to return if her symptoms continued. *Id*.

4

- On May 5, 2019, Ms. Han emailed Dr. Qu complaining that her left shoulder pain was increasing. Ex. 2 at 379. She described a small lump under the injection spot and stated that she was in pain whenever she tried to use her arm. *Id*. She requested that Dr. Qu order an MRI of her left shoulder as she was concerned that she may have SIRVA. *Id*.

- On May 14, 2019, Ms. Han underwent an MRI of her left shoulder, which showed mild rotator cuff tendon inflammation without a tear, as well as mild acromioclavicular joint arthrosis, but no acute abnormalities and no significant fluid in the subacromial bursa. Ex. 2 at 447-48, 519.

- On June 3, 2019, Ms. Han presented for an initial physical therapy evaluation for "impingement or rotator cuff tendonitis," as well as left hip strain. Ex. 2 at 468. On examination, Ms. Han had full passive range of motion without pain and normal strength in her left shoulder. *Id*. at 469-70. She attended three more sessions of physical therapy for both her left hip and left shoulder pain. *Id*. At her last visit on July 3, 2019, Ms. Han exhibited normal range of motion and strength in her left shoulder, although she complained that she was continuing to have "left upper back shoulder pain with minimal improvement." *Id*. at 502-04. She did not return after July 3, 2019.

- Beginning in July 2019, Ms. Han completed 30 days of military training for U.S. Army Officer Boot Camp at Fort Sill. Ex. 3 at 179, 215. In the five-month period after July 3, 2019, there are no documented complaints of shoulder pain.

- On December 11, 2019, Ms. Han was seen at the San Antonio Military Treatment Facility for an evaluation of left deltoid pain. Ex. 3 at 135. The notes from this visit state, "P[atien]t is here for a referral to [physical therapy] for left deltoid and shoulder. P[atien]t pain started in April 19 after immunization and no trauma. P[atien]t has been to PT as a civilian, but pain is persisting… P[atien]t had MRI/Xray as a civilian and it showed tendinosis. P[atient] has pain with lift and raising the arm." *Id*. On examination, Ms. Han's left shoulder was tender on palpation. *Id*. at 137. Range of motion was described as "abnormal." *Id*. Pain was elicited on motion from abduction. *Id*. She was referred to physical therapy. *Id*. at 138.

- On February 20, 2020, Ms. Han presented to her PCP for left hip and left shoulder pain. She had active range of motion within normal limits with her

5

left shoulder and no pain. *See* Ex. 3 at 110. The physician diagnosed her with left shoulder pain "due to anterior glide medial [rotation]." *Id*. at 111. Petitioner was again referred to physical therapy. *Id*.

- On February 28, 2020, Ms. Han presented for her initial physical therapy evaluation where she was evaluated for left hip pain, lower back pain, and left shoulder pain. Ex. 3 at 108. At a March 4, 2020 session, she reported that she was able to increase her exercises without shoulder pain. *Id*. at 101. Petitioner attended four sessions total and sought no further care for her left shoulder after her last visit on March 11, 2020. *See* Ex. 3 at 99.

- Ms. Han attended obstetrics visits in April and May 2020, and received a Tdap vaccination in her left deltoid on April 29, 2020, with no complaints. Ex. 3 at 78.

**V.      Analysis - Six Month Sequela**

In order to state a claim under the Vaccine Act, a petitioner must establish the "severity" requirement demonstrating that the vaccinee has either:

(i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

§11(c)(1)(D). In this case, to satisfy the Vaccine Act's severity requirement, Ms. Han must show that she suffered symptoms of her alleged SIRVA beyond October 22, 2019. Respondent argues that Petitioner has failed to meet her burden on this point. In support, Respondent notes that Ms. Han was discharged from physical therapy on July 3, 2019, at which time she had normal range of motion and strength in her left shoulder. Response at 6.

Petitioner did not treat for left shoulder pain or complain of left shoulder pain for over five months after the last therapy visit. Response at 6. During this gap, as Respondent notes, Petitioner underwent physically demanding military training, while also obtaining treatment for several issues other than her shoulder. *Id.* Respondent thus argues that "petitioner's contention that her left shoulder pain was ongoing since her April 22, 2019 Hep A vaccination is inconsistent with the facts set forth in her contemporaneous medical records; she attended numerous intervening medical visits after her training with

no mention of ongoing shoulder pain, while she *did* report other ongoing problems she was having, such as pain in her left hip or knee." *Id*. at 7.

In effect, Respondent argues, Ms. Han's shoulder pain appears to have mostly resolved by the start of the summer of 2019. Up to June, she had minimal treatment, and although she did report pain, she ceased treatment at this time. Thereafter, she was able to complete 30 days of rigorous physical training with no complaint. And while she did have several medical appointments from July through November 2019, she never at these visits made any complaint about her shoulder.

In many cases, I find that a treatment gap that overlaps with the deadline for the six-month severity "endpoint," measured from the date of onset, does not bar a finding of severity. *See* e.g., *Law v. Sec'y of Health & Hum. Servs.*, No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Mar. 27, 2023); *Kilgore v. Sec'y of Health & Hum. Servs.,* No. 21-1390V, 2023 WL 7130175, at *6 (Fed. Cl. Sept. 29, 2023); *Grieshop v. Sec'y of Health & Human Servs.*, No. 14-119, 2015 WL 4557620, at *5–6 (Fed. Cl. Spec. Mstr. June 5, 2015). A failure to seek treatment does not inherently mean an individual's SIRVA-related pain has ceased, since claimants often live with the pain, based upon the expectation it will subside, or because of the reasonable desire to avoid unnecessary treatment. Claimants also may in that timeframe see medical professionals for unrelated concerns, where they would not logically mention an unrelated physical issue. *See e.g.*, *Rowe v. Sec'y of Health & Hum. Servs.*, No. 17-1182V, 2020 WL 6281742, at *3 (Fed. Cl. Sept. 24, 2020). And the length of the gap also bears on how much weight it should be given.

Here, however, the mix of evidence preponderates against a favorable severity finding. In particular, I give weight to the fact that the Petitioner was able to engage in a strenuous military training program despite her pain (activity that would reasonably be expected to prove difficult to perform for anyone, but especially an individual with a persistent, preexisting medical malady). Moreover, after this training, Petitioner obtained treatment on several occasions for pain impacting her *elsewhere* in her body – but not for her shoulder. *See e.g.,* Ex. 3 at 179, 193, 200-215, 267-279. This not only suggests the shoulder was not then an issue, but also that she had the opportunity to seek treatment – and did so readily for issues bothering her. And finally, the gap itself, and what transpired during it, allows for other factors to have caused the pain to return – independent of the vaccination. All of the above is unsupportive of severity in this case.

Accordingly, the record does not preponderate in favor of the conclusion that Petitioner's SIRVA likely continued during this gap – and thus Petitioner cannot establish that she suffered the residual effects of her left shoulder injury for more than six months.

## VI.     CONCLUSION

Under the Vaccine Act, to be compensable, the vaccine injury alleged must either persist for more than six months or require inpatient hospitalization and surgical intervention. § 11(c)(1)(D)(i).  In this case, the record does not contain medical records or a medical opinion sufficient to demonstrate that Petitioner is entitled to compensation. For these reasons, **Petitioner's claim for compensation is denied and this case is dismissed. The Clerk shall enter judgment accordingly**.[3]

    IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.